GRAND LODGE, COLORED K. P. OF TEXAS v. BLEAVINS. (No. 7513.)*

(Court of Civil Appeals of Texas. San Antonio. March 3, 1926. Rehearing Denied March 31, 1926.)

1. Beneficial associations ⚙︎20(8).

Evidence as against motion for instructed verdict *held* to support judgment for plaintiff, who received permanent injuries to side and back, in lodge initiation, which prevented him from performing hard labor.

2. Beneficial associations ⚙︎20(8).

In action by one injured in lodge initiation, charge that acts in course of such initiation that would reasonably be anticipated to cause serious bodily harm were negligent *held* proper.

3. Release ⚙︎59—In action for injuries received in initiation, instruction that release signed by plaintiff was not void, because he failed to inform himself of contents before signing, held properly refused.

In action by one injured in lodge initiation, where fraud was alleged on part of lodge in securing release of plaintiff's claim, instruction that plaintiff had duty to inform himself of contents of release before executing it, and that it was not void because of failure to do so, *held* properly refused.

4. Trial ⚙︎351(5)—Refusal of special charges held not error, where material matter therein was either covered in other requested issues or embraced in special issues given by court.

Refusal of requested special charges *held* not error, where material matter therein was either covered in other requested issues or embraced in special issues given by court.

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by Curby Bleavins against the Grand Lodge, Colored Knights of Pythias of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

A. S. Wells, of Dallas, for appellant.
Oliver W. Johnson, of San Antonio, for appellee.

COBBS, J. Appellee brought this suit against appellant to recover damages in the sum of $2,500, actual damages, and the same amount as exemplary damages, alleged to be due him on account of alleged personal injuries sustained by appellee during the progress of an initiation in a subordinate lodge of appellant, Grand Lodge, Colored Knights of Pythias of Texas, in the city of San Antonio, on or about the 23d day of July, A. D. 1923; it being alleged in substance that said injuries have caused his back and stomach to become sore and painful, and his back stiffened so that he is unable to pursue his vocation as automobile mechanic, and that such injuries rendered appellee a cripple for life.

The case was tried before a jury on the 25th day of June, A. D. 1925, and a verdict was rendered by the jury upon special issues submitted by the court, and the jury returned a verdict into court upon said special issues awarding appellee the sum of $500, and the court thereupon rendered a judgment for the sum of $456.20; such sum

being the difference of sums advanced prior to the trial of this cause.

The first ground presented by assignment and proposition is that the verdict is not supported by the corroborated testimony from any witness for or on behalf of appellee.

The alleged injuries occurred in a peculiar and unusual way. In order to become a member of the Grand Lodge, Colored Knights of Pythias in San Antonio, appellee had to go through a form of initiation. He says:

"On the 23d day of July, 1923, I was in a drug store on Commerce street, at the time that I was to join the lodge. The two Polk boys asked me to join the lodge, and carried me upstairs to Dr. Walton's office to be examined. I went up, and Dr. Walton examined me; said I was well and good and sound. He examined me because I was going in the lodge; he said I was all right. So I went around to the hall on Chestnut street, and there was a big gang of us there, and we were all waiting until our turn came to be initiated ; and then I went up stairs, went inside of the hall. I don't know what all was done after I got inside of the hall; there are so many things I have forgotten. After we got in the hall, they removed our shoes, coat, and hat. That was the first time I was in the hall. Then they came and got me and carried me over there and showed me these steel spikes; said, 'Feel these,' and I felt of them. 'See these spikes?' Yes; I saw them. Mr. Tolbert told me that; he said, 'You see these spikes?' Yes; I saw them. 'I want you to jump on them.' At that time I felt those spikes; they were pure steel. I know that because I worked in steel; I saw it. He says, 'I want you to jump on them.' They were all sharp, and were stuck up in a square board. And, after I put my hand on the spikes and seen they were tight, then they led me facing the wall; I don't know what they done then. After I faced the wall, they came back and got me again, and got on each side of me and helped me up a ladder, and said 'We want you to jump.' After they got me up the ladder and wanted me to jump, they said, 'Jump! Jump!' Wanted me to jump on those spikes. The spikes were in front of me. They placed the spikes in front of this ladder and led me up to this ladder and told me to get up the ladder and told me to jump, jump. I couldn't; I didn't want to jump on the spikes; and they told me to jump, jump, and they put electricity to me, you see. I had been shocked before with electricity, and I knew then that was electricity that went through me; resembled the shock I received at that time. They told me to jump, and I was shocked and fell back, and they caught me and put me back up there again, and said, 'We want you to jump, and don't fall backwards.' I couldn't jump, and they—I tried to get away and I fell. I didn't know anything after I fell, I only knew I was falling. The second time they shot this electricity in me it was a stronger volt than the first one was. I just couldn't stand that electricity. There was a hall full of people at the time that this initiation was going on. I saw Mr. Tolbert there; Mr. Tolbert showed me the spikes. Mr. Tolbert had charge of that initiation there that night, and Dr. Walton and Mr. Alex Amires. I don't remember anything that happened after I fell. The next thing I done I went home in a car; somebody carried me home. I know who carried me there in the car. They call him 'brother-in-law.' His name was Williams. I don't know where Williams is now. I have tried to find him. Willie Bleavins was in that car besides Williams, and Lonnie Brady, who is in attendance on this court to-day, also the two Polk boys, who are here to-day. They carried me home, and when I arrived there they put me to bed. Then they bandaged me up; the doctor did. I stayed in bed three weeks. During that time I saw members of the lodge—Mr. Tolbert, Dr. Walton, the Polk boys, Brady—a lot of them; I couldn't call the names; I know them by sight. I had Dr. Walton. I didn't pay him anything, and I don't know who paid him. He has never requested me to make any payment to him. Dr. Walton is a member of the Colored Knights of Pythias. I stayed in bed about all that length of time, and I had some girl that Dr. Walton got to nurse me. That girl stayed with me all the time. Her name was Irma Clay. Irma Clay was not living at the same house where I live. I don't know where she was living at.

"Dr. Walton, in my presence, had a conversation with her in reference to payment for waiting on me. He said he would pay it; said he would give her $10 a week if she would wait on me. She was working, and he told her to quit and come there and wait on me, and he would pay her. Dr. Walton didn't make those payments. I paid them myself to this girl, for three weeks.

"I was injured on my side and back. The outward appearance, I notice, on account of having my injuries, was the passing of blood from my rectum."

[1] He was permanently injured as a result thereof and cannot perform hard labor. He was materially corroborated in his testimony by other witnesses and facts. There is no merit in the assignment, and it is consequently overruled.

There was no error in the action of the court in overruling appellant's motion for an instructed verdict. Appellee established his case by ample testimony. Such a ruling as requested where there was testimony to support a judgment, if given, would have been in derogation of all rules of procedure and practice.

[2] We overrule appellant's fourth ground based upon its motion for a new trial, stated as a proposition under the third assignment. There was no error in refusing to instruct the verdict, nor was it unfair or in the least prejudicial to appellant, because it did not define fraud; nor was there any error in the definition of negligence or in the elaboration thereof. The charge complained of is:

"If you find from the evidence that their acts in the course of such initiation found by you in answer to question 2 were such as it would.

reasonably be anticipated would cause plaintiff serious bodily injury, such acts were negligent."

In the light of the facts of this case this was a proper charge. Indeed, it would seem difficult to have better submitted the question of negligence. The court in connection with the charge properly defined negligence.

[3] On the issue of the alleged fraud on the part of appellant in securing a release of the claim of appellee, the appellant requested the court to charge the jury as follows:

"You are further instructed that it was the duty of the plaintiff herein, Curby Bleavins, who was the releasor, to inform himself of the contents of the release before he executed it, and said release is not to be avoided, because he was ignorant of its contents, or that he failed to read it, or to ask to have it read to him."

The court properly refused the same, and there was no error in so doing.

[4] The court did not err in refusing to give any of the special charges requested by appellant, for all the material matter in such special issues were either given in other issues requested or were embraced in the special issues given by the court.

The jury found in favor of appellee on the issue of fraudulently securing a release of his claim.

We find no reversible error assigned, and the judgment is affirmed.